THARPE, tax-collector, *v.* GORMLEY, superintendent of banks.

No. 11789. JUNE 24, 1937. REHEARING DENIED JULY 10, 1937.

*W. H. Harris* and *C. L. Shepard,* for plaintiff.
*Park & Strozier,* for defendant.

BELL, Justice. The City Bank of Fort Valley failed and went into the hands of the superintendent of banks for liquidation in the year 1928. In October, 1931, T. E. Tharpe as tax-collector of the county in which the bank was located brought a suit in the superior court of that county against W. J. Davis, acting as superintendent of banks, alleging in his petition as amended that there was due as State and county taxes on real estate and personal property of the bank, in possession of the defendant, the sum of $994.50 as taxes accruing for the year 1929; and that the defendant had sufficient funds with which to pay the taxes, but refused to pay them. The plaintiff prayed that the defendant be directed to pay over to him, as State and county taxes for the year 1929, the sum specified with interest at the rate of seven per cent. per annum from December 20, 1929. The court sustained a general demurrer and dismissed the petition, and the plaintiff excepted. On review, the Court of Appeals held that the petition stated a cause of action and reversed the judgment, but made no specific ruling as to interest. *Tharpe* v. *Gormley,* 48 *Ga. App.* 731 (173 S. E. 212). On the next trial the allegations of fact contained in the petition were admitted, and the judge passed an order di-

recting the defendant to pay the principal amount of the taxes *without interest*. The plaintiff again excepted, contending that he was entitled to both principal and interest,· the same being a claim for taxes. On the second appearance of the case the Court of Appeals affirmed the judgment, holding that, as the taxes were payable only as an expense of administration, interest was not recoverable. *Tharpe* v. *Gormley,* 55 *Ga. App.* 180 (189 S. E. 673). Certiorari was granted by this court, on the petition of the tax-collector.

The banking act of 1919 as amended in 1927, provided as follows: "Sec. 19. Order of paying debts. After the payment of the expenses of liquidation, including compensation of agents and attorneys, and after the payment of unremitted collections, the order of paying off debts due by insolvent banks shall be as follows: (1) Debts due depositors. (2) Debts due for taxes, State and Federal. (3) Judgments. (4) Contractual obligations. (5) Unliquidated claims for damages and the like. Provided, that nothing herein contained shall affect the validity of any security or lien held by any person or corporation." Ga. L. 1927, p. 195; Code, § 13-821. This statute purports to declare the order of priority only· as to "debts due by insolvent banks." This was not a debt due by the insolvent bank, as it was not in existence at the time the bank failed, but arose afterwards. In this same case the Court of Appeals (*Tharpe* v. *Gormley,* 48 *Ga. App.* 731, supra) held as follows: "There is nothing in the banking act as amended, or elsewhere, absolving the property of a bank or its assets from taxes accruing after the bank has been taken over by the superintendent of banks for liquidation. The constitution of this State, in article 7, section 2, paragraph 4 (Civil Code of 1910, § 6556), provides that 'all laws exempting property from taxation, other than the property herein enumerated, shall be void.' The exceptions referred to are contained in paragraph 2 of this article and section of the constitution, and do not include taxes of the character of taxes accruing against the property or assets of a bank after it has been taken over by the superintendent of banks for liquidation. The property and assets of a bank which are in the possession of the superintendent of banks for the purpose of liquidation are not exempt from taxation."

By the banking act, the State has merely waived in favor of depositors its normal right to first position in the order of priority, as to debts in existence at the time the bank failed. It has waived nothing else whatever; and since the taxes here in question arose subsequently, the banking act is not material, except that the assets of the particular bank are being administered under its terms by a statutory receiver. Accordingly, as to the question in hand, the case must stand or fall by the same principles which would be applicable to any other insolvent corporation whose assets are being administered by a receiver. In such case, the lien for taxes is not affected by the receivership, provided there is property sufficient, although the *manner of enforcement* is different because the property is in custodia legis. *Empire Cotton-Oil Co.* v. *Park,* 147 *Ga.* 618 (2) (.95 S. E. 216) ; *Stephens* v. *First National Bank of Newnan,* 166 *Ga.* 380 (143 S. E. 386). Taxes bear interest after maturity, and the interest has the same priority of lien. Code, § 92-5001. In *Sparks* v. *Lowndes County,* 98 *Ga.* 284 (25 S. E. 426), it was held: "In view of the act of November 11th, 1889 (Acts 1889, p. 31), prescribing that all executions for taxes due the State or any county thereof shall bear interest at the rate of seven per cent. per annum from the time fixed by law for issuing the same, tax executions against railroad companies bear that rate of interest, and the law is applicable even as to taxes accruing and becoming due while the property of such companies is in the hands of a receiver." As to payment of taxes as expenses of administration, the decision in *Dysart* v. *Brown,* 100 *Ga.* 1 (26 S. E. 767), is illuminating. It was there said: "The right to levy and collect taxes for the support of its institutions of government is one of the supreme attributes of a sovereign power, and this charge upon the property of the citizen is, by the law of this State, made superior to any other encumbrance which may be imposed upon it, either by contract or by law. It is universal in its application, and the mere fact that the property of a corporation may be in the hands of a receiver appointed by a court of equity affords no exception to the rule, and does not exempt the property of such a corporation from taxation. Property so circumstanced is as much bound to sustain its proportionate share of the burdens of government as any other, and being liable for taxation, there must of necessity be some

means for the enforcement of this charge in favor of the State. Under ordinary circumstances, the property of the citizen is subject to seizure upon execution, and to sale, in satisfaction of the charge for taxes, and under the express statute law of this State there can be no judicial interference with the collection of taxes lawfully assessed. The ordinary processes of law can not be stayed in their execution when proceeding for this purpose. A difference has been held to exist where courts of equity, in the exercise of their extraordinary powers, have seized and taken into their custody property to be administered through the hands of receivers for the benefit of all persons, as their interests may appear. Under such circumstances, it has been held that the ordinary executive officers of the State are not authorized to proceed and wrest from the possession of receivers property committed to their custody, even though for the purpose of realizing sums due to the State for taxes."

The tax here involved was not an obligation or expense *incurred* by the receiver in the course of administration, but is a charge *imposed by the sovereign*. Taxes have been referred to as expenses of administration only because it is the duty of the receiver to pay them. While the property is thus in the custody of the court, no levy can be made; and so, if the receiver does not pay the taxes otherwise, he may be required to do so by an order of court. For this reason, and no other, can it be properly said that the taxes are paid as expenses of administration. Hence, the rule that the ordinary expenses of administration do not bear interest is altogether inapplicable to the State's lien for taxes. In *Empire Cotton-Oil Co.* v. *Park,* supra, it was held: "It is the duty of a court of equity to direct its receiver to pay the taxes accruing on the property of an insolvent corporation while in the hands of the receiver, upon a timely application for that purpose made by the purchaser of such property at the receiver's sale." This refers to "taxes," not "expenses of administration." As to the necessity of such a proceeding because the execution can not be levied, authority has already been cited; but see also *Coker* v. *Norman,* 162 *Ga.* 238 (2) (133 S. E. 243); *Collier* v. *Gormley,* 178 *Ga.* 142 (2), 147 (172 S. E. 340). In 26 R. C. L. 391, § 348, it is stated that a "receiver is liable for penalties and interest on overdue taxes in the same manner as any other taxpayer." This

statement is supported by the cited case of Coy *v.* Title Guarantee & Trust Co., 220 Fed. 90, affirming Coy *v.* Title Guarantee & Trust Co., 212 Fed. 520, 525. From the foregoing authorities it would seem that the only proper conclusion is that the taxes involved in this case bear interest, and that such interest is a proper charge against the assets of this bank in the hands of the superintendent. While the decision in *Standard Accident Ins. Co.* v. *Luther Williams Bank & Trust Co.,* 51 *Ga. App.* 635 (181 S. E. 201), dealt with a claim of the State, it was not a tax claim.

The decision under review, holding in effect that the taxes in question should rank merely as an expense of administration, can not be sustained as one based on the law of the case. The expressions in the former decision (48 *Ga. App.* 731, supra) as to expenses of administration can mean only that the receiver or superintendent should be required to pay the taxes *in the course of administration,* because the assets in his hands are not subject to levy. This is clearly apparent from the other portions of the decision which have been quoted in this opinion. Still other portions lead to the same interpretation. Certainly it was not held that this claim should not bear interest, and be paid accordingly. There is nothing in the decisions by this court, cited therein (48 *Ga. App.* 734) which in any way conflicts with the views herein expressed as to the implications of the phrase "expenses of administration," and similar expressions, as applied to tax claims.

While it appears from the record that the petition as filed in the trial court alleged that the amount claimed for State and county taxes for the year 1929 "constitutes and is a current administrative expense incident to the liquidation of said bank, and entitled to payment as such without regard to and before payment is made of any of the claims against said bank, which existed when the defendant took possession of its assets," the petition also alleged sufficient facts to show the priority of the claim as one for taxes and a duty on the part of the superintendent to pay the same as such, with interest thereon. There being no demurrer on the ground of duplicity, the petition will support a recovery upon the latter theory, and under the law as applied to the facts it should be construed accordingly. *Citizens & Southern Bank* v. *Union Warehouse & Compress Co.,* 157 *Ga.* 434 (7), 455 (122 S. E. 327). The more especially is this true since the plaintiff was

suing as a public officer for the enforcement of a public right. Code, § 89-903. For the reasons stated, the decision complained of in the petition for certiorari is erroneous and must be reversed.

*Judgment reversed. All the Justices concur, except*

JENKINS, Justice, dissenting. I agree with the majority holding, as supported by *Dysart* v. *Brown,* 100 *Ga.* 1 (supra), that taxes do not cease to accrue against the property of an insolvent while the assets of the insolvent are in the hands of a receiver or quasi receiver; and that, in the language of the majority opinion, they thus continue to accrue as taxes "according to the general rule as to taxation." The proposition just stated is not, however, as I understand the case, a disputed question. The contest is not one involving the *validity* of claims, but relates solely to their *priority.* Thus, while not questioning the validity of the claim for taxes thus accruing, I do question their priority. This is true for the reason that in such a contest, as was said by the trial judge and by the Court of Appeals, if "payable as taxes" and claiming priority merely as such against the claims of depositors, their rank is inferior thereto. The priority of such taxes over the claims of depositors arises not by virtue of the priority given to taxes, inferior in rank to claims of depositors, but because such a tax claim is impressed with an additional and higher priority, superior to claims of depositors, by virtue of its being accounted one of the "expenses of liquidation." Since the State in the exercise of its sovereign power has renounced what was heretofore its paramount claim for taxes, it follows that, in a contest between taxes and claims of depositors, taxes must stand aside unless they can be supported and carried forward by such additional claim to priority; but since expenses of liquidation do not bear interest, the claim of priority for taxes can advance no further than the vehicle on which it rides. In a contest between claims for taxes and creditors of an insolvent bank, other than depositors, it would be important to note that taxes bear interest, and that such interest has the same degree of priority as the taxes themselves. In a contest with depositors, however, the rule as to interest on taxes matters nothing. The important question is not whether taxes bear interest, but whether expenses of liquidation do so. It is conceded that they do not. It follows that interest on taxes incurred during liquidation can not be given priority

over claims of depositors, because the statute makes taxes, treated merely as such, inferior, and the interest on such taxes, even when impressed with the additional quality of expenses of liquidation, can not be given priority over claims of depositors, because the rule is that such expenses do not bear interest.

All this would seem plain and easy enough, were it not for the fact that the majority opinion strikes deeper by laying down the rules that these taxes do not constitute a debt due by an insolvent bank; that the State by the priority statute has not waived its paramount claim for taxes except as to debts in existence at the time the bank failed; that consequently it still retains its priority for taxes accruing subsequently to liquidation, with the result that the priority statute has no application in a case of this kind; and that the case stands just as if the insolvent were an ordinary corporation and not a bank. The question then is whether the priority statute governing claims against insolvent banks, which places expenses of liquidation first, claims of depositors second, and taxes third in priority, really means "taxes" or refers only to antecedent taxes. As heretofore stated, the question is not one concerning a renunciation by the State of its taxes, but only concerning the priority of taxes and other claims against insolvent banks. It would seem that this statute purports to cover and in fact does cover the entire question. Section 19 of the original banking act approved August 16, 1919 (Ga. Laws, 1919, pp. 138, 159); this section bearing the introductory title "Order of Paying Debts," includes as a part of such "*debts*," but fourth in order of priority, "The expenses of liquidation, including the compensation of agents and attorneys," and also includes as a part of such "*debts*," first, "Debts due the State of Georgia," and second, "Debts due any county, district, or municipality of the State, including unpaid taxes." The present act, approved August 25, 1927, in amending section 19 of the former act (Ga. L. 1927, pp. 195, 199), now codified as § 13-821, is also entitled, "Order of paying debts," and includes in such "*debts*" both "the expenses of liquidation, including compensation of agents and attorneys," which expenses are now first in order of priority, and "Debts due for taxes," which now rank after claims due depositors. If taxes accruing after liquidation are not a debt against the bank, whom is the claim against? Not against the quasi receiver; for, as

held by the majority opinion, such taxes are not incurred by the receiver, but are imposed by the sovereign, and can only be accounted expenses of liquidation in the sense that they accrued during the administration, and it is the duty of the receiver as such to pay them. "For this reason, and no other," the opinion says, "can it be properly said that the taxes are paid as expenses of administration." What is it then that legally distinguishes such after-accruing taxes from other taxes, since all are thus "debts" due by the insolvent bank? Would not the correct solution be to hold that both kinds of taxes are taxes, both due by the insolvent bank, and that the only legal difference or distinction is, that, since the subsequent taxes accrued while the receiver had charge, they are therefore impressed with the additional quality of expenses of liquidation, and as such are entitled to come within the first rank of priority? If this is not what differentiates them, what does? Certainly not the language of the statute, which purports to be all-inclusive upon the subject of priorities, and which draws no distinction at all. If subsequently accruing taxes are not to be treated as one of the "debts due by insolvent banks," it would certainly seem that "expenses of liquidation," *incurred by the receiver himself,* could not possibly be so accounted; and yet the statute explicitly deals with "expenses of liquidation" as "debts," and puts them first of all in order of priority. It certainly can not be said that the lawmakers, in fixing the rules of priority as to claims against insolvent banks, did not have the insolvency of the insolvent bank in mind. It therefore appears that the statute does not purport to limit its application to debts previously incurred, but, when it gives priority to depositors over "taxes," means all taxes without any implied exception. As stated, the only theory by which antecedent and subsequently accruing taxes can be differentiated in harmony with the statute is by treating the subsequent taxes as expenses of liquidation, for the reason that they accrue during the administration of the receiver, who is charged with their payment. On this theory the principal, but not interest thereon, would have precedence over claims of depositors.